We are ready now for the fourth case for this morning. United States against Hakeem El-Bey. Ms. Christensen. Good morning, your honors. May it please the court, counsel. My name is Joanna Christensen. I represent the appellant Hakeem El-Bey. This case comes to you a very convoluted and difficult to understand trial. The primary issue we're arguing is that the district court directed a verdict for the government on the issue of materiality for all of the counts of the indictment. The first portion of this issue that I should probably address is whether standbys, standby counsel's objections, were sufficient to preserve the issue for appeal. And we believe they were. They were more than sufficient. But you have a problem there in that Mr. El-Bey is making it absolutely clear that he doesn't want standby counsel to be speaking for him. And it's certainly true that standby counsel, who seems to me was making a heroic effort to observe all professional proprieties. And in the course of the conversation, he's making some very good points and the district judge is hearing them. But usually we think that you have to object either the lawyer for the defendant, which he is not, or the defendant. Mr. El-Bey is off on, you know, the UCC or wherever he is. I think that Mr. El-Bey definitely did not want to be represented and objected many times to standby counsel interjecting, not in front of the jury, which he did not do. And told, you know, get him away from me. I don't want to talk to him. But the one time he really didn't object to standby counsel's interruption was during the jury instruction conference. When standby counsel objected to the court's idea that it might not instruct the jury on materiality or might not adopt the party's standard instruction on materiality, Mr. El-Bey did not object to standby counsel's statements there. And did not directly object when standby counsel filed his report later on. Mr. El-Bey filed many other things, but did not object. The Supreme Court has said that, you know, standby counsel is not seen and not heard. Standby counsel can step in to preserve the defendant's rights. So how can, but how does the court know when he said he's rejecting standby counsel at every turn? And then when standby counsel says he would object if he was counsel, you don't have Mr. El-Bey saying, that's right, I agree with him. Right. But you also don't have him saying, that's right, he's not my attorney. Stop him from talking in that instance. For whatever reason, he did not object to these particular interruptions or assertions by standby counsel. He let them go. And so I think the district court should have assumed that for that. And this court should assume for that issue that Mr. El-Bey was in fact acquiescing to that help that standby counsel was willing to offer him. Even though he did not acquiesce to other help that standby counsel was offering. And this court has held that the concept of standby counsel is not static, that it does have some movement in it. And as long as the jury has the perception the defendant is representing himself, then standby counsel's actions away from the presence of the jury do have import and do have effect on the proceedings. So, I mean, I certainly understand why you're making this argument, because otherwise you're stuck with plain error. Sure. You know, plain error is a standard that does apply. So understanding that this argument is out there, it's actually a much broader argument than an argument about plain error on these instructions, because there are a fair number of cases where people invoke their Faretta rights and their standby counsel. And if we were going to change that balance, that would be a big thing. But what about, let's suppose we didn't agree with you and we thought we really do need to approach this under plain error. You've said that there's a directed verdict on materiality, particularly when the district court uses this example where he says, you know, if they give you $300,000 that you're not entitled to, that's a material falsehood, that's fraud, and that is an element of the charges. So he says those things. He does later say other things, right? That, you know, it's up to you to find the facts and so forth. Why don't those other things, he says, cure the problem with that excerpt that you've highlighted? I think the problem with the statement that you just quoted is that it's not talking to the jury about facts. It's talking to the jury what sounds like an instruction of the law. And in other places, even at the beginning of the jury selection, the district court said you must obey my direction on the law. You can't disagree with the law. And the way it's stated is that that's material falsehood, that is fraud, that is an element of the charges. That doesn't sound like an instruction on the facts. That sounds like an instruction on the law. And the government relies heavily, both in the district court and now on the United States v. Pichet case from the Fourth Circuit. The difference between this case and that case is that the district court judge in that case said if you believe the government's facts beyond a reasonable doubt, you can find this. That's not what this says. This says is that if you tell the IRS a lie talking about Mr. Elbey, that's fraud. And that's the directive that we're talking about here. So the word if doesn't help you there. The word if is if you tell the lie to the IRS, not to the jury, if you believe that the government says Mr. Elbey told a lie. I think that's an important distinction with the Pichet case. So and even if we agree with you that it was error, in terms of the government's evidence, every element was proven. It was not in dispute. And so wouldn't that error be harmless? I don't think it's harmless because the only possible issue really could have been materiality. And that is that the fact that Mr. Elbey had sent these in, that was not an issue. There was no real dispute about that. And the IRS rejected the first three. And so the concept of materiality is the only defense that Mr. Elbey had. Now whether it's a great defense or not, it still was a defense. And taking that away from the jury by directing the verdict necessarily is harmful to Mr. Elbey because it took away any chance he had of making an argument in his own, on his own behalf. So if you've been trying to argue, hypothetically, you'd been his lawyer, that these, these returns that he was filing asking for the 300,000 apiece, that these were not material? How would you construct that argument? It would obviously be a difficult argument. That's why I'm asking. I'm not going to hide that fact. Right. But I think that I would really hit hard on the fact that they do have this frivolous filer alert and, and drill, particularly cross-examine about the use of that frivolous filer. So you would somehow make use of the fact that the first, the first three efforts don't work. They, they go off into the frivolous filer box. Right. And they were identical to the next three efforts. And it's just the middle two, the four and five that the IRS paid. And they got through that frivolous filer, how that system works. I'm not sure. The IRS is a bit of mystery to everybody. This does not cover the IRS with glory, but. No. But that's, you know, and, and defenses are not always easy to come up with, but that's the defense that Mr. Elbey had. And it was taken away from him by the district courts. Didn't Mr. Elbey really just think he was entitled to all this money anyway, because the treasury was holding all of its funds in trust for him or whatever? Well, yes. And that's part of his belief system, which he does not admit to being a sovereign citizen, but that's the belief system that's put out there quite frequently, as we all know. I certainly want to also address the other, the other two issues, although they are separate issues, it's really talking about the atmosphere of this trial in general and the prejudicial comments about Mr. Elbey and about the case in general really added up by the end, by the jury's charge to a direct conversation with the court and the jury about the court's feelings about this case and about Mr. Elbey. Some of what we talk about, it didn't happen in front of the jury, but some of what we talked about in our brief did. Calling him a criminal, you know, you don't pay taxes, you go to jail. A standby counsel, by the way, also objected to that off away from the jury. Attacking people on the street is similar to putting yourself in risk. You know, the IRS is not perfect, but if you attack someone on the street, you're still going to go to jail. Those biased statements by the district court infected the jury and infected this trial with such a prejudice that Mr. Elbey, regardless of the nature of the evidence, really didn't stand a chance from the beginning. He threatened multiple times to remove him from the courtroom, both in front of the jury and outside of the jury's presence. He limited Mr. Elbey's cross-examination of the very first witness and said, if you disagree with me again, I'm going to kick you out. Well, as lawyers, we all know that if I disagree with a judge, I'm not going to get kicked out of the courtroom, usually. I'm hoping. But that's a very serious charge to a pro se defendant who doesn't know what his rights are and doesn't know that he's allowed to respectfully disagree. And he stopped asking questions, essentially, after that admonition. Finally, the comment that a defendant doesn't have to testify, doesn't have to present evidence, of course, zero is a lot less than the prosecution presented. That's problematic in and of itself. Mr. Elbey had no obligation to present evidence, and the district court is making a simple direction that zero evidence equals the government won. So, unless the court has further questions, I'm in my rebuttal time and I reserve my time. I just have one question. In terms of the oral instructions, for example, on witnesses and on the burden, there had been agreed instructions. Everybody had agreed on the pattern instructions. Right. And so the defense didn't have any notice of how these would be said to the jury orally, correct? Well, my argument is that they had noticed. They thought they would be getting the written instructions as agreed to. But I mean, as given, there was no notice as given that there was going to be any variation. No. And that brings in this court's case, the Harbin case, where the judge literally set out the ground rules and then changed them halfway through. And at that point, there's really nothing even Mr. Elbey could have done as the court's instructing the jury. What did they do with the written instructions? Did the jury take those with them? You know, I don't know the answer to that question off the top of my head. They did. But I think they had copies. So they had instructions that were, I don't want to call them supplemental, or different than what the district judge read or said. Apparently. I think it's standard for them to go back to the jury. So they had a set of instructions that were written and then what was given to them by the judge. And it wasn't explained why they were different. How long was the jury out? I think less than two hours, if I remember the timing correctly. Okay. Thank you. Thank you. Ms. Melizia. May it please the court. Counsel. Catherine Melizia on behalf of the United States. So Judge Mannion just touched on something that really bothers me about this, which is that with respect to these instructions, after there's this long conference in which the concept of materiality is discussed and other things, there's finally an agreement on what the instructions are going to say. The written instructions are written up. But the jury here effectively gets two conflicting sets of instructions. They're holding the written instructions and they've just, we It's very confusing. And that in itself is, I think, a troublesome aspect of this trial. Your Honor, the written instructions and the oral instructions that were actually given, there were certainly deviations, but those deviations did not contradict the written instructions that were provided to the jury. I'm not sure that that's right, actually. And when, and particularly this business on materiality, where the court, it may seem like just a word or two, but the court is not phrasing this, you know, if you find A, then B, if you do this, then that. The court is flat out saying that is a material falsehood. That's fraud. And that is an element of the charges. A reasonable juror could think, well, you know, I have some job to do here, but that's not part of it. The court was using specific facts in its instructions. And it's the way it phrased those facts. I understand it's using specific facts. The way it phrased those facts was if. If you find these facts. If these facts are false. That's not what it says. It's when, with specific reference to our case, if you tell the Internal Revenue Service a lie, which is capable of getting them to do something, which they would never do if they knew the truth, namely give you $300,000, etc., etc. That's not the kind of use of the word if that you're describing. The court is stating facts that would support the conclusion that the defendant's statements were material. Yeah, but see after, and then after that, after what Judge Wood wrote, he did not say, and if you find that those are the facts, an element of the offense is, and go, you know, go to the standard instructions. That's not what he says. He says that's a fraud and that's an element of the charges. That is an element of the charges. Oh, I know that. But I'm saying, you're saying, but he didn't say it. If you find that that is a fraud, that is an element of the, so he says the if early in what he says, but not later, it's kind of buried. Taken in isolation, that is correct, but elsewhere the jury, you must find these elements have improved beyond a reasonable doubt. So here's the problem. He sometimes says that, and they've got the written instructions, and then he says these other things. It's very hard in this mishmash for me to see what the jury was instructed. There's no consistency. Some of the instructions were somewhat colloquial, but it was within the law. As long as it does convey the law, and as long as it does leave the jury free to make those fact findings, which are the jury's province. Yes, Your Honor. And in this case, the instructions, though they deviated from the written instructions, from the agreed instructions, they did not misstate the law. Did he read, or did Judge read any of the agreed upon instructions, or were all of them? He provided a version of every one. No, I don't mean that. I mean, did he read, not his version, did he read any of these, one, two, three, four? I mean, some of them are just boilerplate stuff. Some of them are boilerplate. He didn't read those either? Parts of them were quoted verbatim. Some of them were not. So were there any instructions quoted verbatim? It sounds like there were not. 100% verbatim, no, Your Honor. No. So every instruction had some variation or some difference. But that does not mean that the quotations were erased. I understand. It doesn't mean it's error, but I mean, there was nothing that was, everybody had agreed to the specific language, and nothing was read that was in the instructions verbatim. Verbatim, that is correct. And especially in the wake of this long discussion about what does materiality really mean, and this philosophical debate about what's capable of influencing somebody's decisions as opposed to really influencing, as opposed to having an effect upon. It's an interesting discussion, but the jury needs clarity. And I would argue the jury did have clarity here, albeit it was not in the verbatim written instructions. The court did tell the jury at the beginning of its charge that they would have copies of the instructions with them in the jury room, and that they should refer to those instructions. But that's the problem. You know, they hear the oral instruction, and it doesn't say the same thing as what they have in the courtroom, in their jury room. Your Honor, it is not identical, but it is substantively the same. Well, that's the issue. Right, and then the court didn't say in reading the instructions orally, I was trying to make them a little more comprehensible or a little more understandable, but the exact law in this case is contained in these instructions as drafted. Your Honor, that's correct, but there's also nothing in the record to indicate that the jury was confused by these deviations. Well, they didn't send a question, that's why you're saying they weren't confused. Yes, Your Honor. But if they took it to mean that they had to make this listen to what he said, then they weren't confused. Yeah, they'd be very clear, we don't have to do this. Your Honor, the way this instruction was phrased, it was not a finding, it was not a mandate by the court. The court did not tell the jury that it had to find these facts or that these facts have improved beyond a reasonable doubt. No, we understand that's the government's position because that's the best you can do with this record, but the question is would a rational, objective juror, a person, you know, we obviously are not listening to this, think, well, I don't need to find the question of fraud or I don't need to find the question of materiality because the court has told me that and so maybe there are other things, did he mail them, you know, whatever other things there were in the case. The court recited facts that were in the record, it did not instruct the jury that those facts have improved. In fact, instructed the jury it had to find those facts. It did not do it in this specific instruction, but it did it throughout the instructions. You have to find that these facts have improved beyond a reasonable doubt. It is your job as a fact finder to find these facts, to decide whether the government has met its burden on these elements. It reiterates the government's version at least twice throughout these instructions. Right, and if it's doing that generically but not with respect to the material falsehood of the $300,000 or the fraud, then you have again an ambiguous situation for the jury. In the context of the charge as a whole, I would argue it is not ambiguous. The jury understood its province. The court gave an adequate charge consistent with the law and there was no error here just because the court chose to use facts derived from the case. Well, nobody would be thinking of saying that that was wrong. It's the way it's done. It's how clearly it communicates to the jury what their role is versus what the court's role is. Although, the other thing I wanted to raise with you, and this reminds me of some other cases we've seen where judges have, let's just say, injected too much extraneous opinion into a proceeding. The judge is pretty harsh with respect to Mr. Elbae and is losing his temper and is not conveying, let's say, the ideal courtroom demeanor. This was an exceptionally difficult case for a variety of reasons, but most of those reasons were due to the defendant's continuous disruptive comments. Oh, sure. You could ask any judge downstairs. Most of them have had a sovereign citizen case at some point and they've all had difficult defendants. It's not your favorite day at work, probably, but that's part of what you have to do. Certainly, Your Honor, but I would argue with rare exception the district court actually showed extreme patience with the defendant. He attempted at every stage of the relevant law and the proper procedure. He was extremely patient with the defendant's lack of knowledge about the law. He wanted him to understand the difference between representing himself. He wanted him to be comfortable in front of the jury. Where he felt like he failed, he addressed that with the jury. Your opponent has quoted page 10 of the brief. Yes, he says you don't know the law, but he says, you don't know the law because this stuff that you've been about the Foreign Sovereign Immunities Act and so on. That whole excerpt, I mean, that's one way of saying you don't know about the law, but he's, it's a pretty unbuttoned set of remarks. Yes, Your Honor, the court could be harsh at times, but in the context of the trial as a whole, those remarks do not reflect bias by the court. The court did express occasional, I would argue even natural frustration at some of the defendant's antics, but it also attempted to guide the defendant, to encourage him to consult, stand by counsel, and the defendant rejected that advice and rejected the court's rulings about the inadmissible evidence that he was trying to advance at any point he felt like he could get away with it. And that's what the court was attempting to do when it correctly limited the scope of cross-examination of Ms. Morgan. And on the right not to testify and the burden of proof, because he says, as I said earlier, there was no burden on the defendant. Then he goes on to say, so the defendant doesn't have to testify. He doesn't have to put in as much testimony as the prosecution. That's a little inconsistent. You agree. Your Honor. He doesn't have to put in as much as the prosecution. That's not the law because you don't have to put anything in. Of course, zero is a lot less than the fact that there is less, fewer witnesses on one side or the other. That's not a decisive consideration. Your Honor, I think a fair interpretation of that statement. The court heard what it said about not putting in as much evidence as the prosecution and corrected itself immediately. Zero being what the defendant was required to put in. But that's not quite again what he says. What he says, zero is less than the prosecution did. And isn't there a risk the jury's going to hear that if you don't have anything on the other side of the prosecution, the prosecution wins? A jury is still entitled, as you well know, to reject the prosecution's evidence or to find that it doesn't cross that boundary into beyond a reasonable doubt, even if the defendant hasn't said a word. Your Honor, even within this excerpt, this excerpt from the jury instructions, the court reminds the jury of the appropriate burden of proof. Elsewhere in the jury instructions, the court emphasizes repeatedly that the burden of proof is beyond a reasonable doubt, that the defendant is not required to prove his innocence. And I quote, he's not required to present any evidence. He's not required to say anything if he doesn't want to. The burden is on the government. The idea that any reasonable jury would interpret this isolated comment as somehow impermissible commentary on the defendant's right not to present, it's not reasonable. Your Honors, in closing, I would say this was a very difficult trial. And it would have been a difficult trial for any judge. And it was a difficult trial in but his persistent attempts to undermine the district court's rulings and trial process. The district court did its best to maintain order in the courtroom and to limit the jury's exposure to meritless arguments. And with rare exception, the district court was patient with the defendant. And it was patient with the defendant. And none of the isolated comments cited by counsel suggest bias by the court against the defendant. Before I close, I want to respond briefly to counsel's argument that a plain error standard does not apply here. Even putting aside whether or not standby counsel could be said to have represented the defendant, and it's the government's position that he at no point represented the defendant below, the timing and the phrasing of standby counsel's comments during the jury instruction simply were not enough to meet the timeliness and specificity requirements of Rule 30. See, I don't think that's your strongest argument. I mean, the fact that Mr. L. Bay is rejecting standby counsel is a pretty powerful fact. I didn't have any trouble reading what standby counsel said and understanding what he was talking about with respect to materiality, with respect to the elements of the offense, and so forth. It seemed to me that he wants the pattern instruction. That's very specific. So if you got beyond that first hurdle, I'm not sure there is such a problem. The first hurdle being Mr. L. Bay saying, you don't represent me, you know. Your Honor, standby counsel during the jury instructions posed a hypothetical situation where he posited he might object if a particular instruction was not given. He did not object to the actual instruction. No one did. Because he couldn't. He saw himself as not in that role. Your Honor, I would argue even if he saw himself in that role, this would not have been sufficient to preserve this issue for appeal. Okay. All right. Thank you very much. Thank you, Your Honors. Anything further, Ms. Christensen? I would like to respond to the idea that these were isolated comments by the district court. In fact, I think what was isolated was his patience. He did have some patience with Mr. L. Bay, but the vast majority of their interchanges were harsh and inappropriate for the courtroom. Mr. L. Bay was putting forward a theory of law that most of us in this room understand is not viable. But he is one of many defendants we have all faced that have done this. And it has to be handled in a much different manner than this. And finally, I'd like to... I meant to ask this earlier about the false claim. And in the written instructions, there are four clear elements that have to be proven. And those elements are spelled out. The oral instruction on false claim does not include all four elements. Right? Right. Right. And he makes a reference. And again, as with the four elements of the mail fraud charges, if you find any one of them the government has failed to prove beyond a reasonable doubt, then you should acquit. But he doesn't identify them as four during his oral instruction. That's only in the written instructions later. And there's no reference in the oral saying. And those four elements are spelled out in instruction number X, which you'll be given. Right. And I didn't bring my brief up, but I do make the point that that was a shifting of the burden on the false claim, that they had to find that Mr. L. Bay did not make a false claim where it should have been that the government proved that he did make a false claim. So, and that's my argument regarding the idea that the instructions as a whole, even if you put oral and written together accurately conveyed the law, because they didn't. They were conflicting on that issue, shifting the burden on commenting on the failure to testify, on the finding of materiality, the fact that he presented zero evidence, and that's a lot less than the government presented. They just, they weren't complete and whole. You know, there's a reason that we have jury instruction conferences and the parties submit proposed instructions and come to an agreement. The judge is more than welcome to give the instructions that the judge believes accurately conveyed the law, but should tell the parties, this is what I'm going to say. If you object, make your record now and not say, okay, okay, I'll say what you're going to, you want me to say, and then, you know, switch train tracks halfway through the trial. That's the bigger issue here with very small parts, but it is absolutely the whole of the jury trial that needs to be looked at in this case. And looking at it, and honestly, under any standard review, mandate's reversal. Thank you. All right, thank you very much. We appreciate your taking this case on, out of your office, and thanks as well to the government. We'll take the case under advisement.